UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA WILSON, | No. 2:12-cv-01349-MCE-JFM |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| UNITED HEALTH GROUP, INC., a Minnesota Corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota Corporation; and DOES 1 THROUGH 50, INCLUSIVE, | |
| Defendants. | |

Plaintiff Yolanda Wilson ("Plaintiff" or "Wilson") brings this action against Defendants UnitedHealth Group, Inc., ("UHG") and United HealthCare Services ("UHCS") (collectively referred to as "Defendants") seeking to recover damages and an offer of employment under California's Fair Employment and Housing Act (Cal. Gov. Code § 12900 et seq.), California's family care and medical leave laws (Cal. Gov. Code § 12945.2), California's Labor Code (Cal. Lab. Code §§ 201, 203) and a wrongful termination in violation of public policy.  (ECF No. 6.)  On July 13, 2012, Defendants filed a Motion to Compel Arbitration and Stay the Action Pending Arbitration.  (ECF No. 13.) Plaintiff filed a timely opposition on August 23, 2012.  (ECF No. 16.)

///

1

For the reasons stated below, the Court GRANTS Defendants' Motion to Compel Arbitration and Stay the Action Pending Arbitration.

**BACKGROUND**

PacifiCare Health Systems hired Plaintiff as an "Associate Executive I" in March 2001. (Decl. of Deveri Ray, ECF No. 13-2 at 3.)[1] UHG acquired PacifiCare Health System in March 2006. Id. UHCS is a subsidiary of UHG. Prior to PacifiCare's acquisition, Plaintiff signed an electronic acknowledgement of Defendants' arbitration policy ("Arbitration Agreement") which required Plaintiff to arbitrate employment disputes including those related to termination. Id.

Defendants promoted Plaintiff several times. Plaintiff began her career as an "Associate Executive I" and ended it as a "Network Account/Contract Manager."[2] In November 2010, Plaintiff requested leave to have surgery and recuperate from it. Plaintiff planned to return to work on January 11, 2011. On January 4, 2011, Plaintiff's supervisor and Defendants' representative, George Ligget, contacted Plaintiff to discuss Plaintiff's annual evaluation. On January 18, 2011, Plaintiff informed Defendants that she needed to extend her medical leave until February 7, 2011. On February 1, 2011, Mr. Ligget contacted Plaintiff again along with Ms. Janet Lundbye, Defendants' Director of Network Contracting. Ms. Lundbye informed Plaintiff that she would be terminated in 2011 and that she did not need to return to work. Ms. Lundbye informed Plaintiff that Defendants intended to post a new Contract Manager position, but that the position required more experience than Plaintiff had earned during her tenure. Plaintiff applied for the new position on February 17, 2011. On March 1, 2011,

///

---

[1] The Declaration of Deveri Ray is admissible under Fed. R. Evid. 803(6).

[2] The factual assertions in this section are taken from Plaintiff's First Amended Complaint (ECF No. 6.) For the purposes of this Motion, the Court accepts Plaintiff's facts as true and makes all inferences in the light most favorable to Plaintiff.

Defendants sent Plaintiff a letter informing her that they would not consider Plaintiff for the new position. On April 20, 2011, Defendants sent Plaintiff a letter stating that Defendants "eliminate[ed] [her] position effective April 20, 2011." The merits of Plaintiff's discrimination claims are not at issue; this Order focuses on whether Plaintiff's claims are arbitrable.

## STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, arbitration agreements must be "rigorously enforced." Perry v. Thomas, 482 U.S. 483, 490 (1987). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is a construction of the contract language or an allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); see also United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) ("An order to arbitrate . . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")

In determining the existence of an agreement to arbitrate, the Court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration."

1   Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996).  Courts may not
2   invalidate arbitration agreements under state law applicable only to arbitration contracts.
3   AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011).  State courts may not
4   apply traditional contractual defenses, like duress and unconscionability, in a broader or
5   more stringent manner to invalidate arbitration agreements and destroy FAA's purpose
6   to "ensur[e] that private arbitration agreements are enforced according to their terms."
7   Id. at 1748 (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior
8   Univ., 489 U.S. 468, 478 (1989).

9        Generally, in deciding whether a dispute is subject to an arbitration agreement, a
10   court must answer two questions: (1) whether the parties agreed to arbitrate, and, if so,
11   (2) whether the scope of that agreement to arbitrate encompasses the claims at issue.
12   Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If a
13   party seeking arbitration establishes these two factors, the court must compel arbitration.
14   9 U.S.C. § 4; Chiron, 207 F.3d at 1130.

15        On a motion to compel arbitration, the Court applies a standard similar to the
16   summary judgment standard applied under Rule 56 of the Federal Rules of Civil
17   Procedure[3] and gives the opposing party the benefit of all reasonable doubt and
18   inferences.  Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

19
20   **ANALYSIS**
21
22        The FAA allows a party to seek a court order compelling arbitration when another
23   party refuses to arbitrate.  9 U.S.C. §§ 1, 4.  Defendants argue that each of Plaintiff's ten
24   employment-related claims should be arbitrated under the valid and enforceable
25   Arbitration Agreement.  (ECF No. 13.)
26   ///
27
28       [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

Plaintiff opposes Defendants' motion to compel arbitration for three reasons: (1) Defendants' Arbitration Agreement is not a contract, but an illusory promise; (2) no contract exists between Plaintiff and <u>both</u> UHG and UHCS; and (3) the Arbitration Agreement is unconscionable. (ECF No. 16.) The merits of each of Plaintiff's arguments are discussed below.

### A. The Parties Entered into an Enforceable Arbitration Agreement

The United States Supreme Court has held that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." <u>Mitsubishi Motors v. Soler Chrysler-Plymouth</u>, 473 U.S. 614, 626 (1985); <u>see</u> also <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.") Therefore, when one party disputes whether an arbitration agreement applies, the FAA requires the Court to determine whether an agreement to arbitrate exists before compelling arbitration under the agreement. <u>Sanford v. MemberWorks, Inc.</u>, 483 F.3d 956, 962 (9th Cir. 2007). Even when the agreement is covered by the FAA, courts apply state contract law to determine whether an agreement is valid. <u>Pokorny v. Quixtar, Inc.</u>, 601 F.3d 987, 994 (9th Cir. 2010).

Under California law, the right to arbitration depends on the existence of an agreement to arbitrate, and a party cannot be forced to arbitrate in the absence of such an agreement. <u>Frederick v. First Union Secs., Inc.</u>, 100 Cal. App. 4th 694, 697 (2002). "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration." <u>Lee v. S. Cal. Univ. for Prof'l Studies,</u> 148 Cal. App. 4th 782, 786 (2007).

///

1  Because the existence of an arbitration agreement is a statutory prerequisite to granting
2  a motion to compel arbitration, the moving party bears the burden of proving the
3  agreement exists by a preponderance of the evidence.  <u>Rosenthal v. Great W. Fin. Secs.</u>
4  <u>Corp.</u>, 14 Cal. 4th 394, 413 (1996).

5       In this case, the Arbitration Agreement is enforceable despite Plaintiff's
6  arguments.  First, Plaintiff argues that the Arbitration Agreement is an illusory promise
7  because Defendants reserve the right to amend, modify, or terminate the policy once a
8  year as long as it gives its employees 30 days' written notice.  (ECF No. 13-2 at 12.)
9  While contracts require mutuality, it is not an "illusory agreement" when one party
10 reserves the discretionary power to modify personnel terms with written notice because
11 the party is still required to act fairly and in good faith.  <u>24 Hour Fitness, Inc. v. Super.</u>
12 <u>Ct.</u>, 66 Cal. App. 4th 1199, 1214 (1998).  Plaintiff does not allege that Defendants
13 altered the Arbitration Agreement in bad faith or in any unfair manner.  Thus, the
14 amendment provision does not render the Arbitration Agreement illusory.

15      Second, Plaintiff argues that if she agreed to arbitrate claims, she only agreed to
16 arbitrate claims with UHG, not UHCS.  (ECF No. 16 at 13.)  However, a plain language
17 reading of the Arbitration Agreement refutes this argument.  In the first sentence of the
18 Arbitration Agreement, "UnitedHealth Group" is defined as "UnitedHealth Group
19 Incorporated **and** its subsidiaries."  (ECF No. 13-2 at 6.) (emphasis added).  Thus, every
20 subsequent reference to UHG refers to both UHG and all its subsidiaries, including
21 UHCS.  Plaintiff does not allege that UHCS is not a subsidiary of UHG.  Thus, Plaintiff's
22 argument that the Arbitration Agreement is unenforceable because she did not contract
23 with UHCS fails.

24      Finally, Plaintiff argues that the Arbitration Agreement is invalid because it is
25 unconscionable.  For an arbitration agreement to be unconscionable, California law
26 requires both substantive and procedural unconscionability.  <u>Armendariz v. Found.</u>
27 <u>Health Psychcare Servs.</u>, Inc. 24 Cal. 4th 83, 99 (2000).
28 ///

"The procedural element focuses on oppression and surprise by the party with more bargaining power while the substantive element aims to prevent overly harsh, one sided results." Id. A sliding scale is used to assess procedural unconscionability in proportion to substantive unconscionability: "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. at 114. In Concepcion, the U.S. Supreme Court noted that California courts "have frequently applied this rule to find arbitration agreements unconscionable" and instructed California courts to stop applying unconscionability laws more stringently to arbitration agreements. 131 S. Ct. at 1746. The Ninth Circuit explained "Concepcion did not overthrow the common law contract defense of unconscionability . . . rather, the [U.S. Supreme] Court reaffirmed [it] . . . so long as those doctrines are 'not applied in a fashion that disfavors arbitration.'" Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 963 (9th Cir. 2012).

Plaintiff contends that the Arbitration Agreement is procedurally unconscionable because she did know what rules would apply to a dispute, Defendants never gave her a copy of the rules that would govern a disagreement, and Plaintiff did not have the opportunity to negotiate. A plain reading of the Arbitration Agreement provides that the Employment Dispute Resolution Rules of the American Arbitration Association Rules ("AAA Rules") govern unless the Arbitration Agreement includes a specific alteration. (ECF No. 13-2 at 7.)[4]

///
///
///

---

[4] The Court takes judicial notice of the AAA Rules pursuant to Fed. R. Evid. 210. (A court may take judicial notice of matters which are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") The AAA Rules are easily available through the AAA's website. A Google search of "AAA Rules" shows that the AAA Rules appear first in the search results. Other federal courts have taken judicial notice of the AAA Rules pursuant to Fed. R. Evid. 210. Lastly, Plaintiff does not dispute the accuracy of the AAA Rules; instead she disputes whether the Arbitration Agreement incorporated them.

Under California law, "[f]or the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." Shaw v. The Regents of the Univ. of Cal., 58 Cal. App. 4th 44, 54 (1997). If an arbitration provision is contained within a document that is readily available to the contracting party, and its incorporation into the primary contract is clear and unequivocal, the arbitration provision is binding on the party. Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc., No. C-11-0052 EMC, 2011 WL 1086035, at *4 (N.D. Cal., Mar. 24, 2011). A defendant is not required to specify that the incorporated document contains an arbitration clause to make the incorporation valid. Wolschlager v. Fidelity Nat'l Title Ins. Co., 111 Cal. App. 4th 784, 791 (2003). "All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." Id. In this case, the AAA Rules are readily available on AAA's website. The AAA has one set of rules; thus, it is clear which set of rules apply.

      The Arbitration Agreement is also not procedurally unconscionable because Plaintiff had unequal bargaining power. Because of the inevitability that one contracting party almost always has a superior bargaining position, other factors need to be present to render an adhesion contract unenforceable. See Concepcion, 131 S. Ct. at 1749 n.5 (noting that "roughly equivalent bargaining power" of the parties is not a requirement of enforceability of arbitration agreements under the FAA); 24 Hour Fitness,66 Cal. App. 4th at 1213. (holding that an arbitration agreement is not unconscionable absent a showing that it was "unduly harsh, oppressive or one-sided.") Besides unequal bargaining power (which is inevitable in an employment contract), no other conditions indicate an oppressive agreement.

///

///

The Arbitration Agreement is not substantively unconscionable. An agreement is substantively unconscionable if it is "unfairly one-sided." Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003). In this case, the Agreement was mutual: both parties were bound by it unless it applied to "claims for severance benefits under the UnitedHealth Group Severance Pay Plan, claims for benefits under UnitedHealth Group's other ERISA benefit plans, and claims for benefits under UnitedHealth Group's Short-Term Disability Plan." (ECF No. 13-2 at 6.) Plaintiff argues the Agreement does not apply to claims that employers would bring. (ECF No. 6 at 12.) However, the Arbitration Agreement applies to all claims (including claims employers are more likely to bring) unless they fall under the specific exceptions listed above. Further, the Arbitration Agreement does not prevent employees from seeking governmental agency assistance or temporary injunctive relief from the courts. Id. at 7. The Arbitration Agreement is also not substantively unconscionable because it does not significantly limit discovery. The Arbitration Agreement grants the arbitrator significant authority to "resolve all issues concerning discovery . . . [and] the authority to issue subpoenas for the appearance of witnesses or the production of documents pursuant to applicable law." (ECF No. 13-2 at 10.) Further, the Rules guide discovery; Rule 33 steers interrogatories, Rule 34 directs request for documents, and Rule 30 guides depositions. Id. Third, the Arbitration Agreement provides that proceedings are confidential unless "applicable law provides to the contrary." Id. at 9. Applying the law is not overbroad or repugnant to public policy. Lastly, the Arbitration Agreement's $25 fee to bring a claim is not overly harsh or one-sided. Defendants bear all other costs and the nominal fee of $25 is cheaper than court filing fees. The arbitrator may award additional fees if it determines that Defendants or its employees brought a "frivolous, vexatious, or [bad faith] claim." (ECF No. 13-2 at 12.) This provision applies to both Defendants and its employees; thus, it is not one-sided or overly harsh. Accordingly, Plaintiff's argument that the Arbitration Agreement is invalid on the ground of unconscionability fails.

///

### B. The Failure to Hire Claim is within the Scope of the Arbitration Agreement

Before the Court can compel arbitration under the FAA, it must determine whether the arbitration agreement covers the dispute at issue. Lewis v. USB Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). Because the FAA reflects a "liberal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses, 460 U.S. at 24-25. Here, the arbitration agreement provides that . . . a legal claim arises under the policy "if it arises from or involves a claim under any federal, state, or local statute, ordinance, regulation or common law doctrine regarding or relating to employment discrimination terms, and conditions of employment or termination of employment." (ECF No. 13-2 at 6.)

Plaintiff contends that her failure to hire claim is not within the scope of the policy. (ECF No. 16 at 15.) As discussed above, the Court has already determined that the Arbitration Agreement applies. Thus, the terms of the Arbitration Agreement govern which disputes it covers. Plaintiff was an employee until Defendants eliminated her position on April 20, 2011. Plaintiff applied for the new position in February, nearly two months before Defendants eliminated her position. (ECF No. 6 at 11.) Additionally, the Arbitration Agreement covers any dispute "current or former employees" have with Defendants which "arises or relates to employment." (ECF No. 13-2 at 6.) There is no dispute that Plaintiff is Defendants' former employee as this entire lawsuit stems from her employment with Defendants. The Arbitration Agreement governs each of Plaintiff's ten claims, including Plaintiff's failure to hire claim.

### C. The Action Will be Stayed

Section 3 of the FAA provides that if the Court determines issues should be referred to arbitration when a suit is pending, it **shall** stay the trial until the arbitration is complete. 9 U.S.C. § 3.

As discussed above, the Court determined that each of Plaintiff's claims were arbitrable. Defendants filed a motion on July 30, 2012 requesting the Court to stay the action pending trial. (ECF No. 13-1 at 12.)   In accordance with the FAA, the Court will stay the action pending arbitration.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Compel Arbitration and Stay the Action Pending the Arbitration (ECF No. 13) is GRANTED.  Plaintiff is ordered to submit her claim to arbitration.  Since arbitration proceedings would appear to resolve most if not all of Plaintiff's claims in the Complaint (ECF No. 6), the proceedings in this Court are stayed pending completion of arbitration, or upon further order of the Court.

IT IS SO ORDERED.

DATED: December 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE